**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**KELLY IRENE CONLEE**                                                                   **PLAINTIFF**

**vs.**                                                 **CIVIL ACTION NO. 3:12-cv-0082-SAA**

**CAROLYN W. COLVIN**[1]**,
COMMISSIONER OF SSA**                                                       **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of plaintiff Kelly Irene Conlee for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI. Docket 11, p. 165-170. Conlee filed her applications on September 15, 2009, asserting an onset date of May 3, 2008. Docket 11, p. 165,167. The Commissioner denied her claim initially and on reconsideration. Docket 11, pp. 111-114, 120-125. Plaintiff challenged the denial of benefits and filed a request for a hearing before an Administrative Law Judge (ALJ). Docket 11, pp. 127-128. She was represented by an attorney at the administrative hearing on May 24, 2011. Docket 11, p. 138-143. The ALJ issued an unfavorable decision on July 18, 2011. Docket 11, p. 2 - 27. The Appeals Council denied her request for review. Docket 11, p. 1-5. Plaintiff filed the instant

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Rule 25(d) of the Federal Rules of Civil Procedure allows the substitution of Colvin for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205 of the Social Security Act, 42 U.S.C. §405(g).

appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on March 15, 1977 and was thirty-one years old on the date of the ALJ's hearing decision. Docket 11, p. 19. She completed the 10th grade and dropped out of school in the 11th grade. Docket 11, p. 39. She was previously employed as a fast food worker, cashier, sales clerk and telemarketer. Docket 11, p. 24. She claimed disability due to degenerative disc disease, blindness in her left eye, anxiety, and depression. Docket 11, pp. 166.

The ALJ determined that plaintiff suffers from "severe" impairments of degenerative disc disease, blindness in the left eye, moderate depressive disorder and panic disorder but found that her migraine headaches were non-severe. Docket 11, pp. 12, 14, Finding No. 3. Despite finding she had these severe impairments, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Docket 11, p.15, Finding No. 4. Relying on the evidence in the record and the opinions of the consultative examining physicians, Dr. Jim Adams, M.D., Dr, Sarah B. Lau, Ph.D., and Christopher Davis, M.D., along with the plaintiff's testimony, the ALJ concluded that plaintiff retained the residual functional capacity [RFC] to

> perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except that [plaintiff] must be allowed to alternate between sitting and standing every 30 minutes. The [plaintiff] can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. The [plaintiff] can occasionally balance, stoop, crouch, kneel and crawl. The [plaintiff] must avoid moving, dangerous, and hazardous machinery and unprotected heights. The [plaintiff] is limited to unskilled work requiring no interaction with the general public. The [plaintiff] can perform

work requiring only occasionally interaction with coworkers and supervisors.

Docket 11, pp. 16 - 17, Finding No. 5. The ALJ specifically emphasized that the "record does not contain any opinions from treating, examining or evaluating physicians indicating the claimant has limitations substantially greater than those determined in this decision." Docket 11, p. 18.

The ALJ found the plaintiff's subjective complaints less than fully credible and that her allegations of stringent functional limitations were greatly disproportionate to the objective medical evidence. Docket 11, pp. 18-19.

Relying on the testimony of a vocational expert ("VE"), the ALJ held that plaintiff's "severe" impairments prevented her from returning successfully to her past relevant work as fast food worker, cashier, sales clerk and telemarketer. Docket 11, p. 19, Finding No. 6. The ALJ then found that considering the plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that the plaintiff is capable of performing. Docket 11, p. 20, Finding No. 10. Examples of these jobs included a furniture frame builder, furniture assembler and a hardware assembler. Docket 11, p. 20. Accordingly, the ALJ determined that the plaintiff was not disabled as defined by the Social Security Act. Docket 11, p. 21. Finding No. 12. The plaintiff requested review by the Appeals Council. Docket 11, p. 6. After the May 24th hearing, but before the ALJ issued the decision on June 6, 2011, plaintiff's treating physician Dr. Williams referred her for an MRI by the Carvel Imaging Center. Docket 11, p. 611. This new evidence was not submitted to the ALJ, but was available to the Appeals Council. Docket 11, p. 5. After reviewing the record, including the new MRI report and a brief submitted by plaintiff's counsel, the Appeals Council denied plaintiff's request for review because the MRI

report did not provide a basis for changing the ALJ's decision. Docket 11, p. 2. Plaintiff now appeals to this court claiming (1) the Appeals Council did not properly consider the new and material evidence not available at the time of the ALJ's hearing, (2) the ALJ's inconsistent assignment of weight and selective reliance on medical opinions of Dr. Sarah B. Lau resulted in an RFC and subsequent findings unsupported by substantial evidence, and (3) the ALJ used an incorrect interpretation of "severe"at Step 2 of the sequential evaluation process. Docket 16.

## II.  STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v.*

---

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8] 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

[9] *Muse*, 925 F.2d at 789.

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

*Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

1.  Consideration of New and Material Evidence

When new evidence becomes available after the ALJ's decision, and it is likely that this new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. 42 U.S.C. § 405(g); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994). To justify a remand, 42 U.S.C. § 405(g) requires that the evidence be "new" and "material" and that the plaintiff show "good cause" for failing to provide this evidence at the original proceedings. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). This court may only review the new evidence to determine if remand is appropriate. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

In this case the plaintiff's treating physician referred her for an MRI on June 6, 2011, approximately two weeks after the hearing in front of the ALJ and approximately five weeks before the ALJ issued her decision. Docket 11, p. 611. The MRI report states "IMPRESSION: 1. asymmetric disc bulging, most pronounced at L4-5 and L5-S1 [and] 2. shallow central disc

6

protrusion with associated annular tear at L4-5." (Doc. 11, 616). The Appeals Council considered the June 6, 2011 MRI and made it a part of the record, but found that it did not provide a basis for changing the ALJ's decision. Docket 11, 6-10. Plaintiff argues that the court must remand this case because the MRI likely would have changed the ALJ's decision. The court cannot agree.

A January 2003 MRI of plaintiff's lumbar spine revealed "mild degenerative disc disease at L4-L5 with small central disc herniation" and "mild degenerative disc disease L5-S1 with small central and left paracentral disc herniation." Docket 11, p. 340. A December 2008 x-ray of the lumbar spine showed "mild degenerative narrowing at the L5-S1 disk space, [with] small osteophytes aris[ing] about this disk level, . . . [and] [t]here are degnerative facet changes seen at the L4-L5 and L5-S1 level." Docket 11, p. 361. The x-ray report stated, "IMPRESSION: Degenerative change, but no acute abnormality." *Id.* Another lumbar x-ray in December 2010 revealed "mild degenerative disk disease L5-S1" but "no acute finding." Docket 11, p. 457.

Consultative examiner Christopher Davis, M.D. was aware of the Decemeber 2010 lumbar x-ray and had reviewed it before examining plaintiff in December 2010; he found that the plaintiff had degenerative disc disease, but that there was "[n]o clinical evidence of functional impairment in regards to her degenerative disc disease . . . ." Docket 11, p. 461. The findings in the 2003 MRI, the various lumbar x-rays and Dr. Davis's report are all in line with the 2011 MRI. The ALJ had access to all of this information except the 2011 MRI. The Appeals Council had access to all of this information, including the 2011 MRI, and it concluded that the 2011 report provided no basis for remanding the ALJ's decision. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006) (holding that a statement by the Appeals Council that it considered newly

7

submitted evidence and concluded that it did not provide a basis for changing the ALJ's decision is adequate proof that they properly considered the new evidence).

To be "material," evidence cannot merely be cumulative of what is already in the record. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). Further, the plaintiff has provided no evidence – beyond her counsel's lay opinion – that the 2011 MRI results establish additional functional limitations not already included in the ALJ's residual functional capacity finding. Docket 16, pp. 9-13. Although plaintiff asserts that remand is proper if the "new and material evidence provides a 'reasonable probability' that it would change the outcome of the case" [Docket 18, p.1], plaintiff has not demonstrated that this evidence is material or that it provides a "reasonable probability" that it would change the outcome of the case.

Plaintiff's rebuttal argues that the differences between the 2003 MRI and the 2011 MRI reveal deterioration of her back over the course of time. Docket 18, p. 3. Plaintiff places importance upon the ALJ's remark at the hearing that she did not "see a lot of objective evidence" and her statement in the decision that "the lack of objective findings or medical records to support the claimant's significant complaint" to buttress her argument that this new MRI would have provided the objective medical information necessary to substantiate plaintiff's complaints. *Id.* Nevertheless, it is clear that the ALJ examined the various medical records, including the 2003 MRI and x-rays that followed through the years, and discussed them in her decision; in other words, the deterioration of the plaintiff's back is sufficiently chronicled. Additional medical evidence is not necessarily sufficient to substantiate a plaintiff's subjective complaints if those complaints are not credible. The ALJ found that plaintiff's degenerative disc disease was a severe impairment, and she accounted for the functional limitations that it caused by limiting plaintiff to

8

a restricted range of medium work. In sum, even though the 2011 MRI may have been "new" evidence, and the plaintiff clearly had "good cause" for not submitting it before the hearing, the MRI cannot be considered "material" because it merely underscores the evidence of plaintiff's degenerative disc disease that was already in the record, and there is no proof that it establishes any limitations that were not addressed by the ALJ's determination of plaintiff's RFC. The 2011 MRI does not change the substantial evidence in the record that supports the ALJ's decision. *Prince v. Chater*, 77 F.3d 479 (5th Cir. 1996).

    2.    <u>Characterization of Dr. Sarah B. Lau's Examination Results</u>

Plaintiff argues that the ALJ erred by affording "great weight" to the opinion of Dr. Sarah B. Lau, a consultative physician, but giving little weight to those of plaintiff's treating physicians Dr. Subbulaxmi Rayudu and Dr. Terry Little, despite the fact that both physicians diagnosed plaintiff with similar depressive disorders. Docket 16, p. 13. Plaintiff contends that because Dr. Lau's November 2009 diagnosis of "Major Depressive Disorder (rule out, Bipolar II Disorder) [and] Panic Disorder with Agoraphobia" (Docket 11, pp. 429-435, 433) supports Dr. Rayudu's December 2008 diagnosis of "Major Depression, Recurrent, Moderate to Severe Generalized Anxiety Disorder," the ALJ should not have discounted Dr. Rayudu's opinion. Docket 11, pp. 354- 355. Further, she contends that the ALJ freely picked from Dr. Lau's first and second examination opinions; her second examination opinion, dated January 3, 2011, is much more moderate, finding that plaintiff suffered from

> Dysthymic Disorder (chronic mild depression – tendency for eating/sleeping more than typical, low energy or fatigue, low self esteem, difficulty making decisions, feelings of hopelessness). Anxiety Disorder Not Otherwise S . . . Mentally and emotionally, claimant appears capable of holding employment.

9

Docket 11, pp. 464-65. According to plaintiff, picking and choosing between Dr. Lau's opinions to suit the ALJ, while affording little weight to her treating physicians, is error.

Plaintiff's argument is not as much about "cherry picking" as it is an assertion that the ALJ did not accord proper weight to the treating physician. Dr. Rayudu's opinion and Dr. Lau's first findings regarding the plaintiff do indeed support one another. Contrary to plaintiff's argument, the ALJ agreed with both physicians in finding that plaintiff had depression. Doc. 11, p. 12, Finding 3. Plaintiff's argument does not take fully into account the ALJ's conclusion that plaintiff's mental impairments do not produce the extreme limitations which she claimed. Docket 11, pp. 16-17. Specifically the ALJ found that despite plaintiff's claims of problems dealing with large groups of people, she has no problems engaging with her friends and family (Docket 11, p. 33-34), she is able to assist her children getting ready for school, get them on the school bus and assist them with homework (Docket 11, p. 42, 464) and perform household chores (Docket 11, p. 42). Plaintiff further relayed to Dr. Lau that she would be interested in job training if it did not adversely affect her back (Docket 11, p. 465). Docket 11, p. 18. Finally, as noted by the ALJ, the "record does not contain any opinions from treating, examining, or evaluating physicians indicating the claimant has limitations substantially greater than those determined in this decision." *Id.*

In the Fifth Circuit, all medical opinions are to be considered in determining the disability status of a benefits claimant. *Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ. *Id.* at 455; 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not

dispositive, but an ALJ must consider all medical findings and evidence that support those statements. *Id.; see also Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507 (S.D. Tex. 2003).

It is appropriate for an ALJ to discredit a plaintiff's subjective complaints in the face of contradictory medical reports or reports of daily activities. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). "The law is clear that although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987), citing *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (Former 5th Cir. Unit B 1981) (rejecting conclusory statement of treating physician in favor of conclusions of reviewing physician). Following this reasoning, the Fifth Circuit has held that an ALJ is free to choose among the conclusions of examining physicians, even when one is a plaintiff's treating physician. *Bradley*, 809 F.2d at 1057.

The evidence in the record, Dr. Lau's opinion that plaintiff is mentally and emotionally capable of holding employment, as well as the plaintiff's own testimony at the hearing relating to her activities of daily living, all support the ALJ's determination that the plaintiff's mental impairments are not as limiting as her claimed subjective complaints and limitations. The court holds that the ALJ's decision to accord little weight to plaintiff's treating physician and greater weight to other examining health care providers and their opinions is supported by substantial evidence. *See Greenspan,* 38 F.3d at 237 (holding that the ALJ is entitled to determine the credibility of the examining physicians and medical experts and weigh their opinions accordingly).

      3.    <u>Improper Use of the Severity Standard Finding Plaintiff's Migraines were Non-Severe at Step 2 of the Sequential Evaluation Process</u>

Relying on *Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008), plaintiff claims that the ALJ failed to use the proper severity standard at step two of the sequential evaluation process. This argument is one of semantics, but it warrants discussion. The ALJ's decision states:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. **An impairment is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work** (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).

Docket 11, p. 11 (emphasis added). The ALJ then found that the plaintiff had severe impairments of degenerative disc disease, blindness in the left eye, moderate depressive disorder, anxiety disorder and panic disorder (20 CFR 404.1520(c) and 416.920(c)). Docket 11, p. 12, Finding No. 3. She also found that "claimant's migraines are found to be a **non-severe impairment, as it imposes no more than a minimal impact on the claimant's ability to perform work-related activity (<u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985**)." Docket 11, p. 14 (emphasis added).

The Commissioner has issued regulations that define a severe impairment as one "which significantly limits [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985). Instead, says the Circuit, "an impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler,* 752 F.2d

1099, 1101 (5th Cir.1985), *cited in Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir.2000).

Referring to this language, and relying on *Sanders*, plaintiff contends that the court must assume that the ALJ and Appeals Council applied an incorrect standard at Step Two of the sequential evaluation process unless the correct standard was specifically set forth by reference to *Stone* or another opinion of the same effect, or by an express statement that the ALJ or Appeals Council used the construction the Fifth Circuit has imposed for what constitutes a severe impairment. *Sanders v. Astrue*, 2008 WL 4211146, *6 (N.D. Tex. Sept. 12, 2008), citing *Loza,* 219 F.3d at 393; *Stone,* 752 F.2d at 1106. The *Sanders* court went on to state that failure to specifically set forth the correct standard and cite to *Stone* results in legal error requiring remand. *Sanders*, 2008 WL 4211146 at *7. However, after *Stone*, the Fifth Circuit held that it is not necessary to remand a case simply because the ALJ did not use "magic words;" but remand is required where there is no indication the ALJ applied the correct standard. *White v. Astrue*, 2009 WL 763064 (N.D. Tex. Mar. 23, 2009) citing *Hampton v. Bowen,* 785 F.2d 1308, 1311 (5th Cir.1986).

Although the plaintiff is correct that the ALJ's decision contains two separate statements regarding the non-severity standard, the ALJ also specifically cited to the applicable regulations, SSRs and *Stone*. Further, the sentence specifically relating to the ALJ's determination that the plaintiff's migraines were non-severe – "[t]he claimant's migraines are found to be a non-severe impairment, as it imposes no more than a minimal impact on the claimant's ability to perform work-related activity (Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)" – actually quotes directly from the regulations. Docket 11, p. 14, 20 CFR §1520 (c). It is clear that despite inconsistent verbiage, the ALJ applied the correct standard in her finding that plaintiff did not have a severe

13

migraine impairment. *See Valdez v. Astrue,* 2011 WL 2455564 at *7 (N.D. Tex. Jun. 15, 2011) (finding no error when the ALJ referenced both *Stone* and the severity standard set forth in the Regulations). Plaintiff's argument on this point must too fail.

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, the court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 14th day of June, 2013.

      /s/ S. Allan Alexander
      UNITED STATES MAGISTRATE JUDGE